IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **BRIAN ADAIR FULLER,** | ) |
| | ) Case No. 7:11CV00093 |
| Petitioner, | ) |
| | ) |
| v. | ) **OPINION** |
| | ) |
| **UNITED STATES OF AMERICA,** | ) By: James P. Jones |
| | ) United States District Judge |
| Respondent. | ) |

*Brian Adair Fuller*, Pro Se Petitioner; *Nancy S. Healey*, Assistant United States Attorney, Charlottesville, Virginia, *for Respondent*.

In *Watson v. United States*, 552 U.S. 74, 83 (2007), the Supreme Court held that "a person does not 'use' a firearm under [18 U.S.C.] § 924(c)(1)(A) when he receives it in trade for drugs." Petitioner Brian Adair Fuller, proceeding pro se, filed this action as a Petition for a Writ of Error Coram Nobis pursuant to 28 U.S.C.A. § 1651(a) (West 2006), contending that in light of *Watson*, the conduct of which he was convicted is no longer criminal. After a careful review of the record, I must deny Fuller's petition.

I

A grand jury of this court returned a Second Superseding Indictment on July 16, 1998, charging that Fuller had participated in a drug trafficking conspiracy, involving cocaine and cocaine base, in violation of 21 U.S.C.A. §§ 841 (West 1999 & Supp. 2011) and 846 (West 1999) (Count One); and that "in or about August 1997 . . . [Fuller], a/k/a/ "Rico," knowingly used and carried a firearm during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States," in violation of 18 U.S.C.A. § 924(c)(1), (2) (West Supp. 2011) (Count Two).

Fuller pleaded not guilty to both counts. Fuller and one of his codefendants were tried by a jury beginning on August 31, 1998, the late Judge James H. Michael presiding. Because Fuller's coram nobis petition challenges only his conviction on Count Two, I will briefly summarize the evidence related to that count, in the light most favorable to the government.

In the summer of 1997, after receiving information that Fuller and others were distributing cocaine and cocaine base in Louisa, Fluvanna, and Henrico Counties, Virginia, a joint taskforce of federal and state agents conducted an extensive investigation. Multiple individuals testified at trial about Fuller's involvement in this drug operation. Codefendant Brenda Thurston testified that

-2-

Case 7:11-cv-00093-JPJ   Document 18   Filed 03/26/12   Page 2 of 19   Pageid#: 74

she had bought drugs from Fuller (whom Thurston knew as "Rico") several times in 1996 and 1997 for her own use and for resale to others.

At some point in the summer of 1997, Thurston owed Fuller around $1700 for drugs she had purchased from him. Fuller and five other people came to Thurston's house, where several children were playing. Fuller announced that he wanted his money, made the others sit on the couch, and took Thurston and her son in the bedroom. Thurston testified:

> He was going to make an example of me in front of my son, which he was going to cut my hand, and my son got up and he said no, that's my mom, you're not going to be touching her, and that's when Rico pulled a gun from his waistband and held it on my son and told my son, I'll do what the hell I want to do. With that, that's when I stood up and I told him it was between me and him, that my son didn't have anything to do with it and he let my son leave the room then. That's when he asked one of the guys with him to get him a knife and they got him a knife out of the kitchen and they cut me across the palm of my hand.

(Trial Tr. 454-55, Sept. 2, 1998.) Thurston continued: "[T]he conversation started, [Fuller] said he was not a bad guy, he said he was told to kill me, but he was not that type of person and that's when he told me he was going to cut my hand." (*Id.* at 455.)

Thurston also testified about an earlier occasion when Fuller came to her house to collect money she owed him for drugs:

> I owed him some money. He come in. I had maybe $16 laying on the nightstand. He took that. He asked if I had any guns and I told him,

-3-

Case 7:11-cv-00093-JPJ   Document 18   Filed 03/26/12   Page 3 of 19   Pageid#: 75

> yeah.  He knew of the one [.357] pistol and he took that and deducted it from the debt [of around $350] I owed him.

(*Id.* at 456.)

Government witness Demetrius Rogers described Fuller's discussions of drug dealing and Rogers' trips with Fuller to collect drug debts.  Rogers, who knew Fuller had sold drugs to Thurston, testified that he had gone with Fuller to Thurston's apartment "to get some money" she owed Fuller, but had seen Fuller come out of the house with a .357 firearm instead of cash.  (*Id.* at 306.)  Fuller fired the gun and handed it to Rogers, who also fired it.  Dominique Baskfield, one of Fuller's codefendants, testified that he had seen Fuller and Rogers fire a gun after leaving Thurston's apartment and that Fuller had told Baskfield and others that he had taken the gun from Thurston because of her drug debt.  Dominique's younger brother, Damond Baskfield, testified that he had seen Fuller leave Thurston's apartment with a gun and fire it.

Investigators executed a search warrant on October 29, 1997, at a Richmond, Virginia, apartment that Fuller shared with others.  Among other items found during the search, agents seized a loaded .357 pistol.  Thurston identified this pistol as the one Fuller had taken from her.  Rogers and others also identified the pistol as the gun that Fuller had brought out of Thurston's residence and fired.

-4-

Case 7:11-cv-00093-JPJ   Document 18   Filed 03/26/12   Page 4 of 19   Pageid#: 76

In closing arguments, the prosecutor reminded jurors of these occasions when Fuller came to collect drug debt from Thurston. While reviewing evidence of the drug conspiracy, the prosecutor stated:

> You also, of course, heard from Brenda Thurston. . . . Recall the terror she had when she was recalling an incident when Mr. Fuller came and cut her hand and put a gun up to her son's head. I'd suggest to you those tears were real. She did not fake those tears.

(Trial Tr. 828, Sept. 4, 1998.) In discussing the firearm charge, the prosecutor held up the .357 pistol and stated:

> This is the basis of the charge, the firearms charge. You heard Brenda Thurston say this is her gun. It's a .357 Magnum. It was loaded when it was recovered. This gun was taken from her as . . . partial payment of a debt that was owed and you saw a few people identify this as the gun. It is the gun that Mr. Fuller took from Miss Thurston.

(*Id.* at 832.) Later, in discussing the elements of the offenses charged, the prosecutor stated:

> [A]gain, Count 2 is a charge that charges someone is guilty if they use or carry a firearm during and in relation to a drug trafficking crime. Of course, that drug conspiracy charge is a drug trafficking crime and I suggest to you the fact Mr. Fuller took that gun as partial payment of a debt was in furtherance of that drug conspiracy crime. That furthered him. It was a collection of monies owed for a drug debt.

(*Id.* at 836.) During her final argument, the prosecutor reminded jurors:

> As to the guns, the guns that were recovered, who best to identify a gun but Brenda Thurston, her own gun? You didn't just hear it from her though. You heard from various people that were there who saw the gun being taken, saw the gun being shot. It worked.

(*Id.* at 866.)  The only evidence the prosecutor referenced in her argument to the jury on the § 924(c) charge was the incident in which Fuller took Thurston's gun in partial payment of what her debt.

During discussions of the proposed jury instructions, the prosecutor asked whether it would be appropriate to add an instruction further defining the elements of the § 924(c) charge.[1]  Judge Michael responded, "It seems to me 924(c)(1) and (2) is so clear that it's really – no, I won't do that."  (*Id.* at 804.)  The judge also advised the parties as to the jury instructions, "It's going to be read to them, but I don't send this charge in in written form."[2]  (*Id.* at 818.)

---

[1]   In the packet of unnumbered, proposed jury instructions the prosecutor submitted to the court, she included an instruction that read, in part:

> The collection of drug monies owed a defendant constitute acts [sic] in furtherance of a drug conspiracy, which, I have previously instructed you, is a drug trafficking crime for the purposes of these instructions.  You may find that the evidence of carrying a gun to protect drugs or money, or to collect drug debts constitutes "use" as defined under [18 U.S.C. § 924(c)].

(Gov't's Proposed Instructions, Aug. 24, 1998.) The proposed instruction cited *United States v. Locklear*, 24 F.3d 641, 647 (4th Cir. 1994) (affirming § 924(c) conviction based on evidence that defendant carried and used weapon while collecting drug monies allegedly due him), and *United States v. Wiggins*, Nos. 91-522, 91-5123, 1992 WL 173890, at *2 (4th Cir. July 27, 1992) (unpublished) (finding evidence of defendant shooting victim to make him repay drug debt was "use" to support § 924(c) conviction). The government's proposed instructions also included a separate instruction on the elements of the statute.

[2]   Only the court's oral instruction on reasonable doubt has been transcribed.  The court reporter's recording of the remainder of the instructions no longer exists due to a computer malfunction years after the trial, and no written copy of the jury charge appears in the record.

The jury returned a verdict finding Fuller guilty of Counts One and Two.[3] Judge Michael denied Fuller's Motion for Judgment of Acquittal as to Count Two on the basis of insufficient evidence; when Fuller moved for reconsideration, the judge issued a written opinion, denying relief. *United States v. Fuller*, Case No. 3:97CR00069, 1998 WL 708918 (W.D. Va. Oct. 2, 1998). Judge Michael found that Thurston's testimony about Fuller acceptance of a gun in partial payment for the debt she owed him for drugs was sufficient to support Fuller's conviction for "use" of a firearm in violation of § 924(c).[4] *Id.* at *1-2.

Fuller was sentenced on January 5, 1999, to a 265-month term of imprisonment on Count One and a consecutive 60-month term on Count Two.[5]

---

[3] The verdict form listed Count One and Count Two with no other description of the content of these counts.

[4] Judge Michael also noted:

> There is ample evidence for a rational trier of fact to find that Mr. Fuller carried a firearm. In *Muscarello v. United States* the Supreme Court established that a defendant can be convicted under 924(c)(1) where the only evidence that he "carried" a gun is that a gun is found in a car transporting drugs under a defendant's control. 524 U.S. 125, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (June 8, 1998). Though the gun at issue in this case was not recovered from the defendant's body, government witnesses testified to Mr. Fuller's firing of the gun and transportation of the gun in at least one car.

*Fuller*, 1998 WL 708918, at *2 n.1.

[5] This court entered an order on November 8, 2011, reducing Fuller's sentence on Count One to 135 months, pursuant to 18 U.S.C.A. § 3582(c)(2) (West 2000) and

-7-

The Judgment and Commitment Order, entered on January 25, 1999, stated that Fuller stood convicted of "use" of a firearm in violation of § 924(c) as to Count Two.

Fuller appealed, raising various claims, but did not challenge the sufficiency of the evidence to support Count Two. The United States Court of Appeals for the Fourth Circuit affirmed the convictions and sentences. *United States v. Fuller*, No. 99-4071, 2000 WL 142086 (4th Cir. Feb. 9, 2000) (unpublished), *cert. denied*, 530 U.S. 1283 (2000).

Fuller then filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2011), which the court denied. *Fuller v. United States*, Case No. 7:01CV00458, 2002 WL 32074713 (W.D. Va. May 31, 2002) (Turk, J.), *appeal dismissed*, 47 F. App'x 246 (4th Cir. 2002) (unpublished), *cert. denied*, 540 U.S. 929 (2003). This § 2255 motion did not include a direct challenge to the firearm offense.

In his current petition, Fuller asserts only one claim, that he is entitled to coram nobis relief to vacate his conviction on Count Two because after the *Watson* decision, the conduct of which Fuller was convicted does not constitute "use" of a firearm under § 924(c). The government responded to Fuller's coram nobis arguments, asserting that the court should deny his petition, because the evidence

---

Amendment 750 to the Sentencing Guidelines, bringing his total sentence of imprisonment to 195 months.

the jury considered supports his conviction under § 924(c) despite the *Watson* ruling. Fuller has filed a reply to the government's arguments, making the matter ripe for consideration.

II

"The writ of coram nobis was available at common law to correct errors of fact. It was allowed without limitation of time for facts that affect the validity and regularity of the judgment." *United States v. Morgan*, 346 U.S. 502, 507 (1954) (internal quotation marks and citation omitted). Rule 60(a) of the Federal Rules of Civil Procedure abolished such writs in federal civil actions, but *Morgan* recognized the continued availability of coram nobis in criminal cases as "an extraordinary remedy [to be granted] only under circumstances compelling such action to achieve justice." *Id.* at 511. To merit coram nobis relief, the petitioner must show that the asserted error is "of the most fundamental character" and that "no other remedy [is] available and sound reasons exist[ ] for failure to seek appropriate earlier relief." *Id.* at 512 (internal quotation marks and citation omitted).

The first procedural hurdle Fuller faces on the road to coram nobis relief is proving that he has no other remedy available. A federal defendant in custody wishing to collaterally attack his conviction or sentence must employ a § 2255

-9-

Case 7:11-cv-00093-JPJ   Document 18   Filed 03/26/12   Page 9 of 19   Pageid#: 81

motion unless this statutory remedy "is inadequate or ineffective to test the legality of his detention."[6] 28 U.S.C.A. § 2255(e). "It is beyond question that § 2255 is not inadequate or ineffective merely because an individual is unable to obtain relief under that provision." *In re Jones*, 226 F.3d 328, 333 (4th Cir. 2000). The Fourth Circuit has found the § 2255 remedy to be "inadequate and ineffective" only when:

> (1) at the time of conviction settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

*Id.* at 333-34.[7]

Fuller's circumstances satisfy the first and third elements of the *In re Jones* analysis. The *Watson* decision was issued after his conviction and § 2255 motion and his conviction was deemed lawful under prior law, and the new rule in *Watson* is not one of constitutional law so as to provide grounds for Fuller to file a second

---

[6] Since he filled his petition, Fuller has completed his prison sentence and is currently on supervised release in this district. Thus, Fuller remains "in custody" for purposes of seeking post-conviction relief. *See, e.g., United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999). Because he is in custody and within the jurisdiction of this court, I could construe, or he could recast, his *Watson* claim as a habeas corpus petition. Because the finding I reach today forecloses Fuller's claim regardless of the post-conviction remedy he chooses, I will refer to his petition by the title he gives it.

[7] In *In re Jones*, the Fourth Circuit found § 2255 an inadequate and ineffective remedy and allowed the defendant to bring a claim under 28 U.S.C.A. §2241 (West 2006 & Supp. 2011) that *Bailey v. United States*, 516 U.S. 137, 143 (1995) rendered his § 924(c) offense conduct no longer criminal.

-10-

or successive § 2255.[8]  Fuller argues that the *Watson* decision changed the substantive law defining "use" for purposes of § 924(c), such that the conduct of which he was convicted is no longer criminal.  If I so find, then Fuller will have satisfied the second element of the *Jones* standard and would qualify to seek relief from his conviction under some legal remedy other than § 2255, such as coram nobis.

III

At the time of Fuller's offense conduct in 1997, 18 U.S.C.A. § 924(c)(1) read as follows:

> Whoever, during and in relation to any crime of violence or drug trafficking crime . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years . . . .

In *Watson*, as in two important predecessor cases, the Supreme Court refined the definition of "use" in § 924(c).  The decision in *Smith v. United States*, 508 U.S. 223 (1993), established that firearms may be "used" in violation of § 924(c), not only as instruments of intimidation or enforcement, but also as tender in a barter

---

[8] The government agrees that Fuller is barred from bringing his *Watson* claim in a second or successive § 2255 motion, pursuant to § 2255(h)(2), because the Fourth Circuit has ruled that *Watson* did not announce a new rule of constitutional law.  *See United States v. Thomas*, 627 F.3d 534, 538 (4th Cir. 2010).

-11-

transaction, in exchange for drugs. In *Bailey v. United States*, 516 U.S. 137, 143 (1995), the Court held that simply possessing a firearm, without active employment, did not constitute "use" under § 924(c).[9]

Following *Smith* and *Bailey*, courts of appeals had also held that trading drugs for a firearm constituted "use" under § 924(c)(1)(A). *See*, *e.g.*, *United States v. Harris*, 39 F.3d 1262, 1269 (4th Cir. 1994) (finding defendant "used" a firearm for purposes of § 924(c) where he gave cocaine base to a compatriot in exchange for assistance in obtaining a gun); *United States v. Ramirez-Rangel*, 103 F.3d 1501, 1506 (9th Cir. 1997) (holding that trading drugs for a firearm constituted "use" under § 924(c)(1)(A)); *United States v. Ulloa*, 94 F.3d 949, 955 (5th Cir. 1996) (same); *United States v. Cannon*, 88 F.3d 1495, 1509 (8th Cir. 1996) (same). In *Watson*, however, the Supreme Court refined the *Smith/Bailey* definition of "use" to hold "that a person does *not* 'use' a firearm under § 924(c)(1)(A) when he receives it in trade for drugs." 552 U.S. at 83 (emphasis added). The Supreme Court said,

> [W]hen Watson handed over the drugs for the pistol, the informant or the agent "used" the pistol to get the drugs, just as *Smith* held, but

---

[9] In response to *Bailey*, Congress added in 1998 the "possession" prong to § 924(c), which now includes distinct "use and carry" and "possession" offenses. *See United States v. O'Brien*, 130 S. Ct. 2169, 2179 (2010). Fuller's offense conduct occurred in 1997, before the amendment. Hence, he was not charged with, and could not have been convicted of, "possession" of a firearm in violation of § 924(c).

-12-

> regular speech would not say that Watson himself used the pistol in the trade. A seller does not use a buyer's consideration.

*Id.* at 79 (internal quotation marks and citation omitted).

While *Watson* eliminated one narrow form of "use" under § 924(c) – use of a firearm as an item of barter in exchange for drugs – it is well established that defendants may use or carry firearms in relation to drug trafficking crimes in myriad other ways. In the *Bailey* decision, the Court offered examples of conduct that would qualify as "use" under § 924(c):

> The active-employment understanding of 'use' certainly includes brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire a firearm. We note that this reading compels the conclusion that even an offender's reference to a firearm in his possession could satisfy § 924(c)(1). Thus, a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense is a 'use,' just as the silent but obvious and forceful presence of a gun on a table can be a 'use.'

516 U.S. at 148. Moreover, the Court rejected the argument that "use" and "carry" merely describe overlapping conduct. *Id.* at 147-48. "The plain meaning of the term 'carry' as used in § 924(c)(1) requires knowing possession and bearing, movement, conveyance, or transportation of the firearm in some manner." *United States v. Mitchell*, 104 F.3d 649, 653 (4th Cir. 1997).

A firearm is used or carried "in relation to" a drug trafficking offense as an element of a § 924(c) violation if the firearm has "some purpose or effect with respect to the drug trafficking crime" and if its presence was not "the result of

accident or coincidence." *Smith*, 508 U.S. at 238. The firearm must facilitate, or potentially facilitate, the drug trafficking offense. *Id.* If the defendant used or carried the firearm for protection or intimidation, he carried it "in relation to" the drug trafficking offense. *Id.*

IV

Fuller asserts that in light of the *Watson* decision, the jury convicted him for conduct that no longer supports a conviction for using or carrying a firearm in violation of § 924(c) as charged in the Indictment, and he is thus entitled to relief. Fuller points to the prosecutor's closing argument, which sought to focus the jury's attention on the theory that Fuller's acceptance of the gun as an item of barter for Thurston's drug debt was a sufficient basis for finding him guilty of "use" under § 924(c). The prosecutor's only arguments on the § 924(c) charge centered on Fuller's acquisition of Thurston's gun as "partial payment of a debt." (Trial Tr. 832, 836, Sept. 4, 1998.) The prosecutor's argument clearly was contrary to *Watson*.

To succeed in overturning his conviction, however, Fuller must prove more than basic prosecutorial error. Only if this error caused the jury to convict Fuller of conduct that is no longer criminal can Fuller satisfy the second element under *Jones* and seek relief from his conviction after so many years. *Jones*, 226 F.3d at

-14-

Case 7:11-cv-00093-JPJ   Document 18   Filed 03/26/12   Page 14 of 19   Pageid#: 86

333-34. Because the case against Fuller on the § 924(c) charge is distinguishable from the facts of *Watson*, I find that the conduct of which Fuller was convicted remains a crime under § 924(c).

The indictment at issue in *Watson* charged the defendant with one count of distributing a controlled substance and one count of "using" a firearm during and in relation to that crime. 552 U.S. at 77. The charge arose from evidence that Watson told a government informant he wanted to obtain a gun; without quoting a price, the informant suggested that Watson could use drugs to pay for a gun; Watson met with an agent posing as a firearms dealer, gave the agent a quantity of Oxycontin, and received a pistol in exchange; agents found the pistol in Watson's car when they arrested him and found drug and more guns at his house; and Watson said he got the gun to protect his drugs. *Id.* Watson thus made a direct exchange – he gave the possessor of the gun some drugs, and as payment, accepted the firearm. The only evidence of use of a firearm during and in relation to a drug trafficking offense for purposes of § 924(c) was Watson's receipt of the gun as the drug buyer's collateral in a drug sale. After the *Watson* decision, that discreet act of accepting a firearm in direct trade for drugs during and in relation to a crime of drug distribution does not fall within the category of conduct constituting "use" under § 924(c).

In contrast, the § 924(c) charge against Fuller asserted that he "knowingly *used and carried* a firearm during and in relation to a drug trafficking crime" (emphasis added). Moreover, Fuller faced no singular charge of distribution of drugs for which the jury could have found that he accepted the gun as an item of direct barter from the recipient of the drugs. Count One, the only drug charge the jury had to assess against the evidence of Fuller's conduct, asserted that Fuller had conspired to distribute drugs on multiple occasions with multiple individuals.

During Fuller's trial, the jury heard no evidence of a direct barter exchange of drugs for a gun. Thurston did not testify that Fuller brought her drugs for which she volunteered the gun as payment. Thurston did not testify that she and Fuller negotiated a particular monetary value for the firearm or that they discussed what percentage of her personal drug debt its taking would erase.

Moreover, the trial evidence amply supported findings that Fuller both used and carried Thurston's firearm under various theories that remain unlawful after *Watson*. In the overall scheme of Fuller's conspiracy offense, Thurston's testimony reasonably supports a finding that Fuller "used" the taking of the gun as a means to punish Thurston for her failure to pay and to extort future payments from her based on fear, rather than as an item of direct barter. *Bailey*, 516 U.S. at 148. Fuller "carried" the gun openly as he "knowingly possessed and transported" it out of Thurston's apartment. *Mitchell*, 104 F.3d at 653. Fuller "used" the gun

again by firing it outside Thurston's apartment, proving to his cohorts and other witnesses its efficacy as an instrument of protection, enforcement, and intimidation. *Bailey*, 516 U.S. at 148.

Fuller performed these acts of carrying and using the gun "during and in relation to" the drug trafficking conspiracy offense, in that they facilitated his ongoing scheme of intimidation of codefendants and others to gain their cooperation and respect for him as a controlling player in the drug operation. *Smith*, 508 U.S. at 238. Thurston's first story, about the instance when Fuller held a gun to her son's head and cut her hand to intimidate or punish her because she could not pay her debt, also supports the theory that Fuller used and carried guns to frighten people as a means of furthering his illegal drug trade.

While the exact contents of Judge Michael's instructions to the jury are not in evidence, the existing record indicates that the judge rejected the government's request for an instruction to explain the elements of the § 924(c) offense. The judge expressly found that the plain language of the statute itself described the offense clearly enough for the jury to deliberate Fuller's criminal responsibility. The verdict form did not cite the statute or describe the conduct charged; instead, it referred the jury to Count Two of the Second Superseding Indictment, where they could read for themselves the charge that Fuller "knowingly used and carried a firearm during and in relation to a drug trafficking crime" in violation of § 924(c).

-17-

For these reasons, I have no question that the jury had ample evidence and judicial instruction on which to find beyond a reasonable doubt, under valid theories of use and carry, that Fuller violated § 924(c). It is true, of course, that the jury rendered a general verdict and did not specify the theory of "use" or "carry" on which they found Fuller guilty of violating § 924(c). But in this post-conviction proceeding, Fuller has the burden of proving that he stands convicted of conduct that is no longer a crime, and he has failed to do so. *Morgan*, 346 U.S. at 512. Thus, Fuller also fails to satisfy the central element of the *Jones* standard by which to open a portal through § 2255(e) to alternative post-conviction relief. *Jones*, 226 F.3d at 333-34.

For the same reasons that defeat Fuller's bid to prove § 2255 ineffective and inadequate, I also find no fundamental error that "affect[ed] the validity and regularity of the judgment" to any extent "compelling [the extraordinary remedy of coram nobis relief] to achieve justice." *Morgan*, 346 U.S. at 507, 511-12. Therefore, I also deny Fuller's petition on the merits. *See, e.g., Wofford v. Scott*, 177 F.3d 1236, 1244 n.3 (11th Cir. 1999) (noting that collateral attack on federal conviction outside § 2255 arena requires showing of actual innocence as defined in *Bousley v. United States*, 523 U.S. 614 (1998)).

An appropriate order will be entered forthwith.

-18-

Case 7:11-cv-00093-JPJ   Document 18   Filed 03/26/12   Page 18 of 19   Pageid#: 90

DATED:   March 26, 2012

/s/  James P. Jones
United States District Judge